IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE ARTHUR SULLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CV-198-RAH-WC |
| | ) | [WO] |
| JEFFERSON S. DUNN, | ) | |
| Commissioner, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Willie Sullen ("Sullen"), filed this *pro se* 42 U.S.C. § 1983 action while incarcerated at the Bullock Correctional Facility ("Bullock") in Union Springs, Alabama.[1] Sullen sues Commissioner Jefferson Dunn ("Dunn"), Warden Derrick Carter ("Carter"), and Tiffany Morgan ("Morgan") for their alleged violations of his First Amendment rights arising from the processing and handling of his mail. For relief, Sullen seeks damages, costs, and attorney fees.[2] Doc. 6.

Defendants filed an answer, special report, supplemental special reports, and supporting evidentiary materials addressing Sullen's claims for relief. Docs. 25, 27, 32, 35.  In these filings, Defendants deny they acted in violation of Sullen's constitutional rights.  *Id.*  Upon receipt of Defendants' special report, as supplemented, the court entered an order which provided Sullen an opportunity to file a response to Defendants' reports.  Doc. 36.  This order advised Sullen his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  Doc. 36 at 2.  The order further cautioned Sullen that unless "sufficient

---

[1] During the pendency of this action Sullen was released from custody.

[2] In accordance with the prior proceedings and orders of the court, this action is proceeding on Sullen's amended complaint filed May 5, 2017. Doc. 6.

legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion . . . in accordance with law." Doc. 36 at 3. Sullen responded to Defendants' reports, *see* Doc. 39, but his response does not demonstrate there is any genuine dispute of material fact. The court will treat Defendants' special report, as supplemented, as a motion for summary judgment and resolve this motion in favor of Defendants.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks

evidence to support the nonmoving party's case or the nonmoving party could not prove his case at trial).

When Defendants meet their evidentiary burden, as they have, the burden shifts to Sullen to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein*, 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage…. 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted, and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

4

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Sullen fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A.      The Complaint

Sullen brings a First Amendment challenge to prison officials' actions in censoring his mail. Sullen cites to two instances of mail interference which he states resulted from Morgan's violation of prison regulations regarding censorship of his incoming mail. Sullen apprised Dunn and Carter of Morgan's conduct in rejecting his mail from a family member without allowing him to protest the decision but states neither official addressed the issue and claims they failed to properly supervise or train Defendant Morgan despite her repeated violations in this regard. Doc. 6 at 3.

### B.      Sovereign Immunity

To the extent Sullen requests monetary damages from Defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private
> parties against States and their agencies [or employees].  There are two exceptions

> to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity); *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

C.      **Qualified Immunity**

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the incidents occurred. Sullen must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Sullen must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that

should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." See *id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

**D.    Section 1983 Claims**[3]

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. In relevant part, § 1983 provides:

---

[3] To the extent Sullen raises additional allegations of constitutional violations through any properly supported opposition which were not affirmatively pled in his complaint, the law is settled that a plaintiff may not "amend" his complaint through his opposition by raising a new claim(s). *See Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage."). The court, therefore, addresses Sullen's claims against Defendants as alleged in the complaint and considers the facts only to the extent that they support those claims. *See Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.     *Violation of Administrative Regulations*

Sullen alleges Morgan violated prison administrative regulations by censoring incoming mail sent to him from his brother even though, he claims, the correspondence violated no administrative regulation regarding incoming mail.  The law is settled, however, that a violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. That state law or state agencies prescribe certain procedures does not mean those procedures acquire federal constitutional dimension. *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (holding prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (holding mere violations of agency regulations do not raise constitutional questions); *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (finding plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); *Magluta v. Samples*, 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional

---

address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

mandates.”); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates “no legitimate claim of entitlement to a [prison] grievance procedure”); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (finding “there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations ....”); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest; thus, failing to follow regulations does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding the “failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation.”); *see also Riccio v. Cnty. of Fairfax, Va*., 907 F.2d 1459, 1469 (4th Cir. 1991) (finding that if state law grants more protections than Constitution requires state’s failure to abide by its law is not a federal constitutional issue); *Harris v. Birmingham Bd. of Educ*., 817 F.2d 1525, 1527–28 (11th Cir. 1987) (finding violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

In light of the foregoing, Sullen’s claim that Defendants violated prison administrative regulations regarding handling his incoming mail provides no basis for relief in this § 1983 action. Defendants are entitled to qualified immunity on this claim.

## 2. *First Amendment - Freedom of Speech*

Sullen alleges Morgan censored incoming mail from his brother, which violated his First Amendment right to free speech. Sullen cites two instances of mail mishandling. Specifically, Sullen claims that on December 9, 2016, his brother sent correspondence to him at the Fountain Correctional Facility containing letters that never reached Sullen and was not returned to his brother. On December 19, 2019, Sullen’s brother sent him another letter that never reached Sullen

and, again, was not returned to his brother. On March 9, 2017, Sullen wrote letters to Carter regarding Morgan's alleged mishandling of his mail. Doc. 6 at 3.

"Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al–Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008), citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993). *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). "[An inmate] has a First Amendment free speech right [to send and receive legal mail]," which is subject to the limitations attendant to his status as a prisoner and the legitimate penological interests of jail administrators. *Al–Amin*, 511 F.3d at 1333; *see also Turner v. Safely,* 482 U.S. 78 (1987). Courts are "sensitive to the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the 'outside' who seek to enter that environment, in person or through the written word." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Courts "afford[ ] considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id.* at 408. Thus, prison regulations that impinge on an inmate's First Amendment rights must be "reasonably related to legitimate penological interests," and in making that determination, courts consider and balance the four factors set out in *Turner*, 482 U.S. at 89; *see Thornburgh,* 490 U.S. at 413 (*Turner* reasonableness test applies to publications sent to an inmate). The four factors are: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources; and" (4) "whether there are ready alternatives to the regulation." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quotation marks omitted, citing *Turner*, 482 U.S. at 89-91). Isolated incidents of mail

interference, however, generally cannot establish a constitutional violation. *Davis,* 320 F.3d at 351 (finding that the allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm; inmate must show a prison official "regularly and unjustifiably interfered" with his mail); *see also Florence v. Booker*, 23 F. App'x. 970, 972 (10th Cir. 2001) (finding a "single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts").

The undisputed facts reflect that only one item of mail about which Sullen complains was mailed to Bullock—the correspondence he states was mailed on December 19, 2016. Although Sullen was transferred to Bullock from Fountain on December 2, 2016, he asserts the correspondence his brother mailed to him on December 9, 2016, was mailed to the Fountain Correctional Facility.[4] Doc. 39 at 1.

Morgan—who daily inspects incoming and outgoing mail at Bullock—testifies to recalling an instance when Sullen received mail which contained an excessive amount of consistent material. Although Morgan disclaims any knowledge of withholding correspondence on January 9, 2017, Sullen's evidence reflects that on January 9, 2017, he received a notification of rejected mail about correspondence received at Bullock on that date from his brother. *See* Doc. 25-1; Doc. 39-2 at 1. For the purposes of this Recommendation, the court assumes without deciding that the mail sent to Sullen and received at Bullock on January 9, 2017, was the correspondence mailed to him by his brother on December 19, 2016. That correspondence was rejected under Administrative Regulation ["AR"] 448, Rule V, § B-7, which provides that "[i]nmates are allowed to receive up to

---

[4] Sullen maintains the December 9, 2016, correspondence mailed to him at Fountain was censored at that facility before being transferred to Bullock. There is no evidence, however, that prison officials at Fountain forwarded mail addressed to Sullen after he was transferred to Bullock, and Morgan does not recall receiving any forwarded mail for Sullen. Doc. 25-1.

four (4) pages of internet material per letter. Excessive letters with consistent content shall be rejected." Doc. 25-2 at 4. The evidentiary materials filed reflect that Sullen received notice on January 9, 2017, of rejected mail due to "too many copies," and was given an opportunity to resolve the issue. Doc. 39-2 at 1; Doc. 32-1 at 1–2. The notification of rejected mail form (Form 448) advises an inmate he has seventy-two (72) hours to appeal the notification of rejected mail, which must be returned to the Warden or the Warden's designee, and further apprises the inmate he has the option to return mail to the sender at his expense within thirty days or the property will be destroyed. Doc. 25-2 at 12; Doc. 39-2 at 1. Sullen submitted an appeal on January 15, 2017, from the January 9, 2017, notification of rejected mail from his brother. Doc. 39-2 at 1. Although Sullen submitted his appeal beyond the three-day appeal window, Carter considered and denied the appeal. Doc. 39-2 at 1. It is undisputed that Sullen did not request the rejected mail be returned to sender within thirty days. Doc. 25-1; Doc. 39.

Morgan testifies she "was trained to reject letters that contained copies of the same materials from the same sender, because they were considered to be 'excessive with consistent content.' I was also told to reject letters if they came from the same sender and contained the same content that was received on the same day." Doc. 35-1 at 1–2. As explained, on January 9, 2017, Sullen received a notice of rejected mail because correspondence mailed to him from his brother contained too many copies in violation of ADOC administrative regulations. Sullen disputes receiving mail from his brother that contained too many copies or otherwise violated agency regulations. Doc 39.

Even if Sullen could show Morgan improperly rejected the correspondence in question, the challenged incident, without more, is insufficient to establish a constitutional violation. *Davis*, 320 F.3d at 351; *see generally Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997) (finding

isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable). Sullen's assertion that Morgan withheld or rejected every letter mailed to him from his brother is conclusory and unsupported. And Sullen's submission of an affidavit from his brother compels no different conclusion as the instances of returned/rejected mail as described in that affidavit primarily concern correspondence mailed to Sullen by his brother while Sullen was incarcerated at the Fountain Correctional Facility except for the December 19, 2016, correspondence discussed. Doc. 39-1 at 1–3.

Sullen has produced no evidence reflecting that Morgan "regularly and unjustifiably" interfered with his mail or that any of her actions resulted from improper motivation.[5] *See Davis*, 320 F.3d at 351; *Al-Amin,* 511 F.3d at 1334. To the extent Sullen's First Amendment claim is based on Morgan's failure to comply with prison regulations regarding rejection of his incoming mail, as explained, prison officials' failure to follow their own policies and procedures, without more, does not amount to a constitutional violation. *Myers,* 97 F.3d at 94.  Because Sullen has failed to produce evidence to substantiate his allegation that Morgan's actions amounted to an unconstitutional interference with his incoming mail, Defendants are entitled to qualified immunity on this claim. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) (finding that "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment."); *Anderson*, 477 U.S. at 252.

---

[5] For the purpose of describing the phrase "excessive letters with consistent content," Morgan provided hypothetical examples in her affidavit of the type of material which would fit that description. Doc. 35-1. To the extent Sullen believes Morgan was describing  mail sent to him by his brother which she then rejected or censored because the content of that correspondence differed with her political views, he has misinterpreted the illustrative content of her statement. *See* Doc. 39 at 2.

3.     *Due Process*

To the extent Sullen complains Defendants intentionally, unlawfully, or without authorization denied him delivery of correspondence from his brother or destroyed the correspondence in violation of his due process rights (Docs. 6, 39), such allegations fail to implicate the due process protection afforded by the Constitution. The law is settled that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled in other part by Daniels v. Williams*, 424 U.S. 327 (1986) (holding that an individual deprived of property by an "unauthorized act" of a state official has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (emphasis in original) (finding no due process violation occurs "as long as *some* adequate postdeprivation remedy is available." ); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (finding inmate's claim that deputy marshal failed to return ring to inmate, whether due to negligence or an intentional act, provided no basis for relief as neither a negligent loss of property nor an intentional deprivation of property violates due process.); *Holloway v. Walker*, 790 F.2d 1170, 1173-1174 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where high level state employee intentionally engages in tortious conduct, as long as the state system as a whole provides due process).

"[T]he Alabama legislature has created a statute providing a tort remedy for the unlawful deprivation or interference with an owner's possession of personalty. *Ala. Code* § 6-5-260 (1975). Moreover, an aggrieved person may file a claim with the state Board of Adjustment to recover

damages to property [or for a loss of property] caused by the state of Alabama or any of its agencies. *Ala. Code* § 41-9-60 (1975)." *Browning v. City of Wedowee, Ala.*, 883 F. Supp. 618, 623 (M.D. Ala. 1995). Thus, the State of Alabama provides meaningful post-deprivation remedies for Sullen to seek redress from Defendants' alleged improper denial or destruction of his mail. Defendants are entitled to qualified immunity on this claim.

  *4. Defendants Dunn and Carter*

  Sullen alleges he informed Dunn and Carter about Morgan's actions regarding his mail but complains they failed to correct the situation, ignored it, and failed to properly train Morgan. Dunn and Carter deny they ever received notice or information regarding Sullen's concerns over the alleged mishandling of his mail. These Defendants also deny any personal knowledge or involvement with the claims made the basis of the complaint. And as Commissioner of the ADOC, Dunn states he does not control the daily operations of any ADOC facility.[6] Docs 27-1,27-2.

  Sullen's allegation that Dunn and Carter failed to investigate his complaints over Morgan's actions regarding mail sent to him by his brother entitles him to no relief.  Under settled law, inmates do not have a constitutional right to an investigation of any kind by government officials. *DeShaney v. Winnebago Soc. Servs.,* 489 U.S. 189, 196 (1989) (holding "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.); *Wilkins v. Illinois Dept. of Corrections*, 2009 WL 1904414, *9 (S.D. Ill. 2009) (finding that "[b]ecause inmates do not have a due process right to [an investigation] at all, an

---

[6] That Sullen sent correspondence regarding concerns over his incoming mail to Governor Bentley's office, Carter, and Dunn does not refute the testimony of Dunn and Carter that they did not personally receive notice regarding his claims about his mail or that they had no knowledge of the matter. *See* Docs. 27-1, 27-1 and Docs. 39-3, 39-4, 39-5.

allegation that any investigation which is actually conducted by prison officials was 'inadequate' or 'improper' does not state a constitutional claim.").

Sullen has also not shown that either Dunn or Carter was directly responsible for or participated in actions about which he complains or that any actions taken by Morgan or any other correctional official regarding his incoming mail were a consequence of any policy or custom established by them or due to any laxity in training. In such a situation, the law in this circuit is well settled. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted); *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014). "Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Marsh v. Butler Co. Ala.*, 268 F.3d 1014, 1035 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (finding a supervisory official "can have no *respondeat superior* liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (finding supervisory officials are not liable based on *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), *citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (finding 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials at Bullock could attach to Dunn or Carter only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a

causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir.1999) (stating that a claim for supervisory liability fails where there is no underlying constitutional violation).

Here, Sullen presents no evidence that would create a genuine dispute of material fact regarding the claims lodged against Dunn and Carter. It is undisputed these defendants did not participate in or have any involvement, direct or otherwise, with the claims made the basis of the amended complaint. In light of the foregoing, Dunn and Carter can be held liable for actions of correctional officials at Bullock only if their actions bear a causal relationship to the purported violations of Sullen's constitutional rights. To establish the requisite causal connection and avoid entry of summary judgment in favor of Dunn and Carter, Sullen must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[ ] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Dunn and Carter] directed the [facility's staff] to act unlawfully, or knew that [staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted demonstrates Sullen has not met this burden.

The record before the court contains no evidence to support an inference that Dunn or Carter directed Morgan or any other correctional official to act unlawfully or knew that she would act unlawfully and failed to stop such action. In addition, Sullen presents no evidence of obvious, flagrant, or rampant abuse of continuing duration by Morgan in the face of which Dunn and Carter failed to take corrective action. Finally, no evidence is presented that the challenged action occurred pursuant to a policy enacted by Dunn or Carter. Thus, the requisite causal connection

does not exist between the actions of Morgan and Dunn or Carter, and liability under the custom or policy standard is not warranted. Based on the foregoing, Defendants are entitled to qualified immunity on this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' motion for summary judgment (Doc. 25) be GRANTED;

2.      Judgment be ENTERED in favor of Defendants and against Plaintiff;

3.      This case be DISMISSED with prejudice; and

4.      Costs be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **April 15, 2020**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  This Recommendation is not a final order and, therefore, it is not appealable. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 1st day of April, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE